## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| WAREHOUSE SOLUTIONS INC. d/b/a  INTELLIGENT AUDIT., | : : : | **COMPLAINT AND** **JURY DEMAND** |
| Plaintiff, | : : | Civ. Action No. |
| v. | : : | |
| CHRISTOPHER COLOMB and ENVISTA, LLC. | : : : | |
| Defendants | : : | |

---

Plaintiff Warehouse Solutions Inc. d/b/a Intelligent Audit ("Intelligent Audit" or the "Company") by and through its attorneys Pashman Stein Walder Hayden, P.C. hereby files this complaint against Defendants Christopher Colomb ("Colomb") and enVista LLC ("enVista") and alleges as follows:

### THE PARTIES

1.      Intelligent Audit is a New Jersey corporation with a principal place of business located at 365 West Passaic Street, Suite 455, Rochelle Park, New Jersey 07662.

2.      Colomb is an individual and a resident of the State of Tennessee.

3.      enVista is an Indiana limited liability company with a principal place of business located at 11555 North Meridian Street, Suite 300, Carmel, Indiana 46032.

### JURISDICTION AND VENUE

4.      For diversity jurisdiction purposes, Intelligent Audit is a citizen of New Jersey.

5.      For diversity jurisdiction purposes, Colomb is a citizen of Tennessee.

6.      According to enVista's filings with the State of Indiana, Office of Secretary of State its members are citizens of California, Georgia, Illinois, Indiana, Maryland, Texas, Washington, and West Virginia.

7.      For diversity jurisdiction purposes, enVista is a citizen of California, Georgia, Illinois, Indiana, Maryland, Texas, Washington, and West Virginia.

8.      There is complete diversity among the parties.

9.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this judicial district pursuant to 29 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district

11.     Intelligent Audit and Colomb also entered into an agreement selecting the state and federal courts of the State of New Jersey as the venue for litigation concerning their agreement.

## STATEMENT OF FACTS

### I.      Background on Intelligent Audit and its Business

12.     Intelligent Audit is a supply chain technology services company.

13.     Intelligent Audit has developed certain proprietary information including, but not limited to, a best-in-class freight audit and recovery software solution that helps customers reduce transportation costs.

14.     This proprietary information gives Intelligent Audit a competitive advantage over its competitors who do not have access to this information.

15.     Intelligent Audit has invested substantial time and expense to market its services to prospective and existing customers and to develop goodwill in the transportation industry.

## II.     Colomb's Employment with Intelligent Audit

16.     On September 23, 2020, Intelligent Audit offered Colomb a position as  Director, Global Implementations.

17.     In that position, he was responsible for onboarding Intelligent Audit's new customers, driving the implementation process, interfacing with the Company's internal development and account management teams, and coordinating the work of the Company's various audit teams.

18.     In connection with his position as Director of Global Implementations, Intelligent Audit gave Colomb access to confidential business information including, but not limited to, the Company's infrastructure and processes, customer lists, marketing plans, information about prospective customers, service agreements, scope of work documents, pricing information, contact information for the Company's customers and business partners.

19.     Colomb was also privy to confidential information about the Company's strategic plans, including planned enhancements to the Company's products and services.

20.     Colomb also had access to the Company's SQL database.

21.     Since Intelligent Audit would be disclosing this confidential business information to Colomb, the Company required him to enter into an agreement to protect that information from unauthorized disclosure.

## III.     The Agreement Between Intelligent Audit and Colomb

22.     On September 24, 2020, Colomb and Intelligent Audit entered into an Employment, Proprietary Rights, Non-Disclosure, Developments, Non-Competition and Non-Solicitation Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as **Exhibit A.**

23.     Colomb signed the Agreement and sent a copy of his signature on the Agreement to via email Intelligent Audit in New Jersey.

24.     In the Agreement, Colomb agreed that he would not disclose or use any of the Company's Proprietary Information during or after his employment with Intelligent Audit, with limited exceptions (the "Non-Disclosure Provision").

25.     The Agreement also contains a provision barring Colomb from working for a company that is competitive with the Intelligent Audit's business in the geographic area where the Company does business during the 12-month period following his termination (the "Non-Compete Provision").

26.     Colomb also agreed that he would not solicit Intelligent Audit's customers or interfere with the Company's business relationship with customers, accounts, and business partners during 12-month period employment following the termination of his employment (the "Non-Solicitation Provision").

27.     The Agreement contains a choice of law provision stating that the Agreement shall be governed by New Jersey law.

28.     The Agreement contains a forum selection clause stating that any action suit or legal proceeding concerning the Agreement "shall be commenced only in a court of the State of New Jersey or if, appropriate, a federal court located within New Jersey."

**IV.     Colomb Breached His Agreement with Intelligent Audit**

29.     On March 17, 2021, Colomb resigned his employment with Intelligent Audit.

30.     Colomb advised Intelligent Audit that he accepted a position at enVista.

31.     enVista markets and sells services that are competitive with the services that Intelligent Audit develops, designs, licenses, markets, and sells.

32.     In particular, enVista offers a freight audit solution, myShipINFO®, that is competitive with Intelligent Audit's freight audit and recovery software solution.

33.     enVista markets myShipINFO® "global freight audit and payment solution" that gives customers "the power to view [their] entire transportation and freight spend in one, centralized interface."

34.     Upon information and belief, enVista hired Colomb to serve as the Product Manager for myShipINFO®.

35.     On March 30, 2021, the undersigned sent a letter (the "Letter") to Colomb concerning his post-employment obligations to Intelligent Audit. A copy of the letter is attached as **Exhibit B.**

36.     The Letter informed Colomb that Intelligent Audit would file litigation against him if he began working at enVista in violation of the Non-Compete Provision in the Agreement.

37.     Colomb did not respond to the Letter.

38.     Upon information and belief, Colomb's start date at enVista is April 12, 2021.

**COUNT ONE**
**BREACH OF CONTRACT**
**(Against Chris Colomb)**

39.     Colomb entered into an agreement with Intelligent Audit (*i.e.*, the Agreement).

40.     Intelligent Audit fully performed its obligations to Colomb under the Agreement.

41.     The Agreement is necessary to protect legitimate interests of the Company including, the non-disclosure of confidential information and the preservation of Intelligent Audit's goodwill with its customers.

42.     Intelligent Audit and enVista both compete for customers in the transportation industry who are seeking a freight audit solution.

43.    Colomb breached the Agreement by working for enVista during the 12-month Non-Compete Period.

44.    Intelligent Audit has suffered damages as a result of Colomb's breach of the Agreement in an amount that is presently unknown and will be determined at trial, but is in excess of $75,000.

45.    Intelligent Audit's claim against Colomb arises out of his contacts with Intelligent Audit in New Jersey, his communications with Intelligent Audit concerning his prospective employment, his agreement with Intelligent Audit, and his employment with Intelligent Audit.

**WHEREFORE**, Plaintiff Warehouse Solutions Inc. (d/b/a Intelligent Audit) respectfully requests this Court to enter a judgment against the Defendant Christopher Colomb providing the following relief:

a)    A permanent injunction enforcing the terms of the Agreement;

b)    Compensatory and consequential damages in an amount to be determined at trial;

c)    An award of costs that Plaintiff has incurred in this action; and

d)    All such other relief as the Court may deem just and proper.

**COUNT TWO**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(Against enVista, LLC)**

46.    As set forth above, Colomb and Intelligent Audit entered into an agreement.

47.    enVista had knowledge of the Agreement.

48.    On March 30, 2021, the undersigned sent a letter to enVista advising it of Colomb's obligations under the Agreement which included a redacted version of the Agreement. (A copy of that letter is attached as Exhibit C).

49.    In response, enVista requested a more complete version of the Agreement.

50.     On April 1, 2021, the undersigned provided the information that enVista requested.

51.     On April 7, 2021, enVista confirmed that Colomb's start date was April 12, 2012.

52.     enVista wrongfully and without justification interfered with the Agreement by employing Colomb.

53.     Intelligent Audit has suffered damages as a result of enVista's interference with the Agreement.

54.     Intelligent Audit has suffered damages as a result of enVista's tortious interference in an amount that is presently unknown and will be determined at trial, but is in excess of $75,000.

55.     Intelligent Audit, which is a New Jersey corporation with a principal place of business in New Jersey, has suffered the brunt of the harm caused by enVista's tortious interference in New Jersey.

56.     enVista expressly aimed its tortious conduct at Intelligent Audit which is based in New Jersey.

**WHEREFORE**, Plaintiff Warehouse Solutions Inc. (d/b/a Intelligent Audit) respectfully requests this Court to enter a judgment against the Defendant enVista, LLC providing the following relief:

a)      A permanent injunction barring enVista from interfering with the Agreement;

b)      Compensatory and consequential damages in an amount to be determined at trial;

c)      Punitive damages;

d)      An award of costs that Plaintiff has incurred in this action; and

e)      All such other relief as the Court may deem just and proper.

Dated April 12, 2021.                    **PASHMAN STEIN WALDER HAYDEN, P.C**.
                                         Attorneys for Plaintiff
                                         *Warehouse Solutions Inc., d/b/a/ Intelligent Audit*

                                  By:    /s/ James W. Boyan III
                                         JAMES W. BOYAN III
                                         21 MAIN ST – SUITE 200
                                         COURT PLAZA SOUTH
                                         HACKENSACK, NJ 07601
                                         TEL. (201) 488-8200
                                         FAX. (201) 488-5556
                                         jboyan@pashmanstein.com


### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues and claims.

                                         **PASHMAN STEIN WALDER HAYDEN, P.C**.
                                         Attorneys for Plaintiff
                                         *Warehouse Solutions Inc., d/b/a/ Intelligent Audit*

                                  By:    /s/ James W. Boyan III
                                         JAMES W. BOYAN III
                                         21 MAIN ST – SUITE 200
                                         COURT PLAZA SOUTH
                                         HACKENSACK, NJ 07601
                                         TEL. (201) 488-8200
                                         FAX. (201) 488-5556
                                         jboyan@pashmanstein.com

# <u>CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that to the best of my knowledge, the matters raised herein are not the subject of any other pending lawsuit, arbitration, or administrative proceeding.

**PASHMAN STEIN WALDER HAYDEN, P.C**.
Attorneys for Plaintiff
*Warehouse Solutions Inc., d/b/a/ Intelligent Audit*

By:    <u>/s/ James W. Boyan III</u>
        JAMES W. BOYAN III
        21 MAIN ST – SUITE 200
        COURT PLAZA SOUTH
        HACKENSACK, NJ 07601
        TEL. (201) 488-8200
        FAX. (201) 488-5556
        jboyan@pashmanstein.com

# EXHIBIT A

**EMPLOYMENT, PROPRIETARY RIGHTS, NON-DISCLOSURE, DEVELOPMENTS, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT**

This Employment, Proprietary Rights, Non-Disclosure, Developments, Non-Competition, and Non-Solicitation Agreement (the "Agreement") is made by and between Warehouse Solutions Inc. d/b/a Intelligent Audit (the "Company") and Christopher Colomb (the "Employee").

IN CONSIDERATION of the Employee's employment by the Company, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Employee agrees as follows:

1.     Job Responsibilities.

Employee is currently being hired as a Director, Global Implementations, such designation being subject to change by the Company in its sole discretion. While employed by the Company, Employee is required to devote all of Employee's business time and best efforts to the Company and to the discharge of Employee's duties, and are not permitted to devote any material amount of time towards any other business activity, paid or unpaid.

2.     Compensation.

Employee will be eligible to receive an annualized salary of $125,000.00 payable in accordance with the ordinary payroll practices of the Company. Following the end of each calendar year, Employee may be eligible for a retention and performance bonus, based on Employee's performance and the Company's performance during the applicable calendar year, as determined by the Company in its sole discretion. Employee must be an active employee of the Company on the date any bonus is distributed in order to be eligible for and to earn a bonus award. The Company agrees such bonus shall be at least $5,000 for calendar year 2020. It will be in the Company's sole discretion whether, if at all, to adjust Employee's compensation at any point. The amount and/or payment of any components of compensation are within the sole discretion of the Company.

3.     Time Off, Other Benefits.

Employee will be eligible to accrue fifteen (15) paid days off per calendar year, prorated for any partial calendar year(s) of employment. Time off may be taken at such times and intervals as shall be determined by Employee, subject to the reasonable business needs of the Company and provided Employee provides Employee's supervisor appropriate notice. The annual allotment of days off is accrued as follows: one-twelfth per month of employment. Unsused time off must be used by the end of the calendar year and unused time cannot be carried forward. Employee may be entitled to participate in the Company's benefit programs on the same terms and conditions as other employees of the Company. It will be in the Company's sole discretion whether, if at all, to adjust Employee's time off and/or other benefits at any point.

4.     Work Environment.

The Company is committed to providing an environment that fosters professional development in an atmosphere of mutual respect for all. The Company prohibits discrimination and harassment in any form, and Employee acknowledges that Employee will abide by the Company's policy of non-discrimination and non-harassment.

5.   <u>Proprietary Information</u>.

(a)   The Employee agrees that all information and know-how, whether or not in writing, of a private, secret or confidential nature concerning the Company's business or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. By way of illustration but not limitation, Proprietary Information may include systems, software and codes, or systems, software and codes in the course of development, or planned or proposed systems, software or codes, customer and prospect lists, contacts at or knowledge of customers or prospective customers, customer accounts and other customer financial information, price lists and all other pricing, marketing and sales information relating to the Company or any customer or supplier of the Company, databases, modules, products, product improvements, product enhancements, processes, methods, techniques, negotiation strategies and positions, operations, projects, developments, plans, research data, personnel data obtained in the performance of Employee's duties, and financial data. Except as otherwise permitted by Section 5 below, the Employee will not disclose any Proprietary Information to others outside the Company or use the same for any unauthorized purposes without written approval by an officer of the Company, either during or at any time after the Employee's employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee. While employed by the Company, the Employee will use the Employee's best efforts to prevent publication or disclosure of any confidential or Proprietary Information concerning the business, products, processes or affairs of the Company.

(b)   The Employee agrees that all disks, files, documents, letters, memoranda, reports, records, data, drawings, notebooks, program listings, or any other written, photographic or other record containing Proprietary Information, whether created by the Employee or others, which shall come into the Employee's custody or possession, shall be and are the exclusive property of the Company to be used only in the performance of the Employee's duties for the Company. Upon termination or cessation of the Employee's employment with the Company for any reason or at the Company's request, the Employee agrees to return to the Company any and all materials and copies thereof in the Employee's custody, possession or control containing Proprietary Information.

(c)   The Employee acknowledges that the Employee's obligations with regard to Proprietary Information, which are set out in subsections 5(a) and 5(b) above, extend to all information, know-how, records and tangible property of customers of the Company or suppliers to the Company or of any third party who may have disclosed or entrusted the same to the Company or to the Employee in the course of the Company's business.

6.   <u>Developments</u>.

(a)   The Employee will make full and prompt disclosure to the Company of all inventions, creations, improvements, discoveries, methods, developments, software and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by the Employee or under the Employee's direction or jointly with others during the Employee's employment by the Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

(b)   The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all of the Employee's right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright

2

applications. However, this subsection 6(b) shall not apply to Developments that do not relate to the present or planned business or research and development of the Company and that are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state that precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this subsection 6(b) shall be interpreted not to apply to any invention that a court rules and/or the Company agrees falls within such classes. The Employee hereby also waives all claims to moral rights in any Developments.

(c)     The Employee agrees to cooperate fully with the Company, both during and after the Employee's employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, but not limited to, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights and powers of attorney, that the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as the Employee's agent and attorney-in-fact to execute any such papers on the Employee's behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development under the conditions described in this sentence.

7.     <u>Non-Competition and Non-Solicitation.</u>

(a)     While the Employee is employed by the Company and for a period of twelve (12) months following the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(1)     In the geographical area where the Company does business or has done business at the time of the termination or cessation of the Employee's employment, engage in any business or enterprise (whether as an owner, partner, officer, employee, director, investor, lender, consultant, independent contractor or otherwise, except as the holder of not more than 1% of the combined voting power of the outstanding stock of a publicly held company) that is competitive with the Company's business, including, but not limited to, any business or enterprise that develops, manufactures, designs, licenses, produces, markets, sells or renders any product or service competitive with any product or service developed, manufactured, designed, licensed, produced, marketed, sold or rendered by the Company or planned to be developed, manufactured, designed, licensed, produced, marketed, sold or rendered by the Company while the Employee was employed by the Company;

(2)     Either alone or in association with others (a) solicit, induce or attempt to induce, any employee or independent contractor of the Company to terminate his or her employment or other engagement with the Company, or (b) hire, recruit, or attempt to hire, or engage or attempt to engage as an

3

independent contractor, any person who was employed or otherwise engaged by the Company at any time during the term of the Employee's employment with the Company; provided, that this clause (b) shall not apply to the recruitment or hiring or other engagement of any individual whose employment or other engagement with the Company has been terminated for a period of six (6) months or longer; and/or

(3)     Either alone or in association with others, solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the actual or prospective clients, customers, accounts or business partners of the Company which were contacted, solicited, or served by the Employee while he/she was employed by the Company.

(b)     If any restriction set forth in this Section 7 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(c)     If the Employee violates any of his/her obligations under this Section 7, he/she shall continue to be held by the restrictions set forth herein until a twelve (12) month period has expired without any violation.

8.     Other Agreements.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company or to refrain from competing, directly or indirectly, with the business of such previous employer or any other party. The Employee further represents that his/her performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by the Employee in confidence or in trust prior to his/her employment with the Company, and the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

9.     Scope of Disclosure Restrictions.

Nothing in this Agreement or elsewhere prohibits the Employee from communicating with government agencies about possible violations of federal, state, or local laws or otherwise providing information to government agencies, filing a complaint with government agencies, or participating in government agency investigations or proceedings. The Employee is not required to notify the Company of any such communications; provided, however, that nothing herein authorizes the disclosure of information the Employee obtained through a communication that was subject to the attorney-client privilege. Further, notwithstanding the Employee's confidentiality and nondisclosure obligations, the Employee is hereby advised as follows pursuant to the Defend Trade Secrets Act: "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of

4

law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

10.     Not An Employment Contract; At Will Employment.

Employee's employment at the Company is at-will, meaning that it can be terminated by either Employee or the Company at any time, with or without cause. Any references herein to specific time periods are for the exclusive purpose of identifying the triggering of certain benefits and obligations only, and do not alter the at-will nature of this Agreement. In addition, the Employee acknowledges that this Agreement does not constitute a contract of employment and does not imply that the Company will continue the Employee's employment for any period of time.

11.     General Provisions.

(a)     No Conflict. The Employee represents that the execution and performance by him/her of this Agreement does not and will not conflict with or breach the terms of any other agreement by which the Employee is bound.

(b)     Acknowledgements and Equitable Remedies. The Employee acknowledges that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and considers the restrictions to be reasonable for such purpose. The Employee agrees that any breach or threatened breach of this Agreement will cause the Company substantial and irrevocable damage that is difficult to measure. Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies that may be available, shall have the right to seek specific performance and injunctive relief without posting a bond. The Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(c)     Entire Agreement. This Agreement supersedes all prior agreements, written or oral, between the Company and the Employee relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her employment duties or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(d)     Severability. The invalidity or unenforceability of any provision of this Agreement shall not affect or impair the validity or enforceability of any other provision of this Agreement.

(e)     Waiver. No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

(f)     Successor and Assigns. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation or

entity with which or into which the Company may be merged or that may succeed to all or substantially all of its assets or business; provided, however, that the obligations of the Employee are personal and shall not be assigned by the Employee.

(g)     Governing Law, Forum and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the State of New Jersey or, if appropriate, a federal court located within New Jersey), and the Company and the Employee each consents to the jurisdiction of such a court. The Company and the Employee each hereby irrevocably waives any right to a trial by jury in any action, suit or other legal proceeding arising under or relating to any provision of this Agreement.

(h)     Captions. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

WITNESS our hands and seals:

**Warehouse Solutions Inc. d/b/a Intelligent Audit**

Date:___9/24/20___          By:_____

                                          **Hannah Testani**
                                          **Chief Operating Officer**


                                          **Christopher Colomb**


Date:_____          _____
                                          (Signature)

6

entity with which or into which the Company may be merged or that may succeed to all or substantially all of its assets or business; provided, however, that the obligations of the Employee are personal and shall not be assigned by the Employee.

(g) <u>Governing Law, Forum and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the State of New Jersey or, if appropriate, a federal court located within New Jersey), and the Company and the Employee each consents to the jurisdiction of such a court. The Company and the Employee each hereby irrevocably waives any right to a trial by jury in any action, suit or other legal proceeding arising under or relating to any provision of this Agreement.

(h) <u>Captions</u>. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

WITNESS our hands and seals:

**Warehouse Solutions Inc. d/b/a Intelligent Audit**

Date:_____  By:_____
                                      **Hannah Testani**
                                      **Chief Operating Officer**

                                      Christopher Colomb

Date:___9/24/20___             _____
                                      (Signature)

6

# EXHIBIT B



**James W. Boyan III**
Partner
Direct: (201) 270-4935
jboyan@pashmanstein.com

March 30, 2021

**VIA EMAIL AND OVERNIGHT MAIL**

Chris Colomb
27 Cherokee Dr.
Memphis, TN 38111

   Re:  Violation of Your Employment Agreement with Intelligent Audit

Dear Mr. Colomb:

   This firm represents Warehouse Solutions Inc., d/b/a Intelligent Audit ("Intelligent Audit" or the "Company"). On September 24, 2020, you entered into an agreement with Intelligent Audit (the "Agreement") which contains several restrictive covenants, including a 12-month non-compete (the "Non-Compete Provision"). Enclosed please find a fully-executed copy of the Agreement. On March 17, 2021, you resigned your employment with Intelligent Audit and advised that you have accepted employment with enVista LLC and plan to begin working with that company on April 1, 2021.

   Since enVista is a direct competitor of the Company, your employment with that company will violate the Non-Compete Provision which prohibits you from engaging in any business that is competitive with Intelligent Audit for a period of 12 months following the cessation of your employment.

   If you begin working for evVista, Intelligent Audit will file a lawsuit against you seeking monetary damages and permanent injunctive relief. The Company will also seek to hold you liable for any other violations of the Agreement, including any disclosures of Intelligent Audit's Proprietary Information (as that term is defined by the Agreement) and/or any violations of the Agreement's non-solicitation provisions.

   If you have not done so already, you must immediately return all disks, files, documents, emails, letters, memoranda, reports, records, data, containing Intelligent Audit's Proprietary Information to the Company pursuant to Section 5 (b) of the Agreement. This includes your Company-issued laptop computer. In addition, please delete any Proprietary Information belonging to the Company that remains on your electronic devices, including any work-related emails or text messages and/or any contact information for Intelligent Audit's customers, vendors, and suppliers.

Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601

Phone: 201.488.8200
Fax: 201.488.5556
www.pashmanstein.com

We also demand that you preserve any and all documents that may be relevant to Intelligent Audit's potential claims against you, including any communications between you and representatives of enVista. This includes all emails, text messages, voicemails, and telephone records.

Please let us know by close of business on **March 31, 2021** whether you intend to abide by the terms of the Agreement. If you fail to do so, we will assume that you plan to violate the Agreement and will proceed accordingly.

Very truly yours,

James W. Boyan III

Encl.   (Employment, Proprietary Rights, Non-Disclosure, Developments, Non-Competition, and Non-Solicitation Agreement)

cc:   Hannah Testani, Chief Executive Officer

**EMPLOYMENT, PROPRIETARY RIGHTS, NON-DISCLOSURE, DEVELOPMENTS, NON-COMPETITION, AND NON-SOLICITATION AGREEMENT**

This Employment, Proprietary Rights, Non-Disclosure, Developments, Non-Competition, and Non-Solicitation Agreement (the "Agreement") is made by and between Warehouse Solutions Inc. d/b/a Intelligent Audit (the "Company") and Christopher Colomb (the "Employee").

IN CONSIDERATION of the Employee's employment by the Company, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Employee agrees as follows:

1.    Job Responsibilities.

Employee is currently being hired as a Director, Global Implementations, such designation being subject to change by the Company in its sole discretion. While employed by the Company, Employee is required to devote all of Employee's business time and best efforts to the Company and to the discharge of Employee's duties, and are not permitted to devote any material amount of time towards any other business activity, paid or unpaid.

2.    Compensation.

Employee will be eligible to receive an annualized salary of $125,000.00 payable in accordance with the ordinary payroll practices of the Company. Following the end of each calendar year, Employee may be eligible for a retention and performance bonus, based on Employee's performance and the Company's performance during the applicable calendar year, as determined by the Company in its sole discretion. Employee must be an active employee of the Company on the date any bonus is distributed in order to be eligible for and to earn a bonus award. The Company agrees such bonus shall be at least $5,000 for calendar year 2020. It will be in the Company's sole discretion whether, if at all, to adjust Employee's compensation at any point. The amount and/or payment of any components of compensation are within the sole discretion of the Company.

3.    Time Off, Other Benefits.

Employee will be eligible to accrue fifteen (15) paid days off per calendar year, prorated for any partial calendar year(s) of employment. Time off may be taken at such times and intervals as shall be determined by Employee, subject to the reasonable business needs of the Company and provided Employee provides Employee's supervisor appropriate notice. The annual allotment of days off is accrued as follows: one-twelfth per month of employment. Unsused time off must be used by the end of the calendar year and unused time cannot be carried forward. Employee may be entitled to participate in the Company's benefit programs on the same terms and conditions as other employees of the Company. It will be in the Company's sole discretion whether, if at all, to adjust Employee's time off and/or other benefits at any point.

4.    Work Environment.

The Company is committed to providing an environment that fosters professional development in an atmosphere of mutual respect for all. The Company prohibits discrimination and harassment in any form, and Employee acknowledges that Employee will abide by the Company's policy of non-discrimination and non-harassment.

5.    <u>Proprietary Information</u>.

(a)    The Employee agrees that all information and know-how, whether or not in writing, of a private, secret or confidential nature concerning the Company's business or financial affairs (collectively, "Proprietary Information") is and shall be the exclusive property of the Company. By way of illustration but not limitation, Proprietary Information may include systems, software and codes, or systems, software and codes in the course of development, or planned or proposed systems, software or codes, customer and prospect lists, contacts at or knowledge of customers or prospective customers, customer accounts and other customer financial information, price lists and all other pricing, marketing and sales information relating to the Company or any customer or supplier of the Company, databases, modules, products, product improvements, product enhancements, processes, methods, techniques, negotiation strategies and positions, operations, projects, developments, plans, research data, personnel data obtained in the performance of Employee's duties, and financial data. Except as otherwise permitted by Section 5 below, the Employee will not disclose any Proprietary Information to others outside the Company or use the same for any unauthorized purposes without written approval by an officer of the Company, either during or at any time after the Employee's employment with the Company, unless and until such Proprietary Information has become public knowledge without fault by the Employee. While employed by the Company, the Employee will use the Employee's best efforts to prevent publication or disclosure of any confidential or Proprietary Information concerning the business, products, processes or affairs of the Company.

(b)    The Employee agrees that all disks, files, documents, letters, memoranda, reports, records, data, drawings, notebooks, program listings, or any other written, photographic or other record containing Proprietary Information, whether created by the Employee or others, which shall come into the Employee's custody or possession, shall be and are the exclusive property of the Company to be used only in the performance of the Employee's duties for the Company. Upon termination or cessation of the Employee's employment with the Company for any reason or at the Company's request, the Employee agrees to return to the Company any and all materials and copies thereof in the Employee's custody, possession or control containing Proprietary Information.

(c)    The Employee acknowledges that the Employee's obligations with regard to Proprietary Information, which are set out in subsections 5(a) and 5(b) above, extend to all information, know-how, records and tangible property of customers of the Company or suppliers to the Company or of any third party who may have disclosed or entrusted the same to the Company or to the Employee in the course of the Company's business.

6.    <u>Developments</u>.

(a)    The Employee will make full and prompt disclosure to the Company of all inventions, creations, improvements, discoveries, methods, developments, software and works of authorship, whether patentable or not, which are created, made, conceived or reduced to practice by the Employee or under the Employee's direction or jointly with others during the Employee's employment by the Company, whether or not during normal working hours or on the premises of the Company (all of which are collectively referred to in this Agreement as "Developments").

(b)    The Employee agrees to assign and does hereby assign to the Company (or any person or entity designated by the Company) all of the Employee's right, title and interest in and to all Developments and all related patents, patent applications, copyrights and copyright

2

applications. However, this subsection 6(b) shall not apply to Developments that do not relate to the present or planned business or research and development of the Company and that are made and conceived by the Employee not during normal working hours, not on the Company's premises and not using the Company's tools, devices, equipment or Proprietary Information. The Employee understands that, to the extent this Agreement shall be construed in accordance with the laws of any state that precludes a requirement in an employee agreement to assign certain classes of inventions made by an employee, this subsection 6(b) shall be interpreted not to apply to any invention that a court rules and/or the Company agrees falls within such classes. The Employee hereby also waives all claims to moral rights in any Developments.

(c)    The Employee agrees to cooperate fully with the Company, both during and after the Employee's employment with the Company, with respect to the procurement, maintenance and enforcement of copyrights, patents and other intellectual property rights (both in the United States and foreign countries) relating to Developments. The Employee shall sign all papers, including, but not limited to, copyright applications, patent applications, declarations, oaths, formal assignments, assignments of priority rights and powers of attorney, that the Company may deem necessary or desirable in order to protect its rights and interests in any Development. The Employee further agrees that if the Company is unable, after reasonable effort, to secure the signature of the Employee on any such papers, any executive officer of the Company shall be entitled to execute any such papers as the agent and the attorney-in-fact of the Employee, and the Employee hereby irrevocably designates and appoints each executive officer of the Company as the Employee's agent and attorney-in-fact to execute any such papers on the Employee's behalf, and to take any and all actions as the Company may deem necessary or desirable in order to protect its rights and interests in any Development under the conditions described in this sentence.

7.    <u>Non-Competition and Non-Solicitation.</u>

(a)    While the Employee is employed by the Company and for a period of twelve (12) months following the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:

(1)    In the geographical area where the Company does business or has done business at the time of the termination or cessation of the Employee's employment, engage in any business or enterprise (whether as an owner, partner, officer, employee, director, investor, lender, consultant, independent contractor or otherwise, except as the holder of not more than 1% of the combined voting power of the outstanding stock of a publicly held company) that is competitive with the Company's business, including, but not limited to, any business or enterprise that develops, manufactures, designs, licenses, produces, markets, sells or renders any product or service competitive with any product or service developed, manufactured, designed, licensed, produced, marketed, sold or rendered by the Company or planned to be developed, manufactured, designed, licensed, produced, marketed, sold or rendered by the Company while the Employee was employed by the Company;

(2)    Either alone or in association with others (a) solicit, induce or attempt to induce, any employee or independent contractor of the Company to terminate his or her employment or other engagement with the Company, or (b) hire, recruit, or attempt to hire, or engage or attempt to engage as an

independent contractor, any person who was employed or otherwise engaged by the Company at any time during the term of the Employee's employment with the Company; provided, that this clause (b) shall not apply to the recruitment or hiring or other engagement of any individual whose employment or other engagement with the Company has been terminated for a period of six (6) months or longer; and/or

(3)    Either alone or in association with others, solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the actual or prospective clients, customers, accounts or business partners of the Company which were contacted, solicited, or served by the Employee while he/she was employed by the Company.

(b)    If any restriction set forth in this Section 7 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

(c)    If the Employee violates any of his/her obligations under this Section 7, he/she shall continue to be held by the restrictions set forth herein until a twelve (12) month period has expired without any violation.

8.    Other Agreements.

The Employee hereby represents that, except as the Employee has disclosed in writing to the Company, the Employee is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his/her employment with the Company or to refrain from competing, directly or indirectly, with the business of such previous employer or any other party. The Employee further represents that his/her performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by the Employee in confidence or in trust prior to his/her employment with the Company, and the Employee will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

9.    Scope of Disclosure Restrictions.

Nothing in this Agreement or elsewhere prohibits the Employee from communicating with government agencies about possible violations of federal, state, or local laws or otherwise providing information to government agencies, filing a complaint with government agencies, or participating in government agency investigations or proceedings. The Employee is not required to notify the Company of any such communications; provided, however, that nothing herein authorizes the disclosure of information the Employee obtained through a communication that was subject to the attorney-client privilege. Further, notwithstanding the Employee's confidentiality and nondisclosure obligations, the Employee is hereby advised as follows pursuant to the Defend Trade Secrets Act: "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of

4

law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

10.     Not An Employment Contract; At Will Employment.

Employee's employment at the Company is at-will, meaning that it can be terminated by either Employee or the Company at any time, with or without cause. Any references herein to specific time periods are for the exclusive purpose of identifying the triggering of certain benefits and obligations only, and do not alter the at-will nature of this Agreement. In addition, the Employee acknowledges that this Agreement does not constitute a contract of employment and does not imply that the Company will continue the Employee's employment for any period of time.

11.     General Provisions.

(a)     No Conflict. The Employee represents that the execution and performance by him/her of this Agreement does not and will not conflict with or breach the terms of any other agreement by which the Employee is bound.

(b)     Acknowledgements and Equitable Remedies. The Employee acknowledges that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and considers the restrictions to be reasonable for such purpose. The Employee agrees that any breach or threatened breach of this Agreement will cause the Company substantial and irrevocable damage that is difficult to measure. Therefore, in the event of any such breach or threatened breach, the Employee agrees that the Company, in addition to such other remedies that may be available, shall have the right to seek specific performance and injunctive relief without posting a bond. The Employee hereby waives the adequacy of a remedy at law as a defense to such relief.

(c)     Entire Agreement. This Agreement supersedes all prior agreements, written or oral, between the Company and the Employee relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an agreement in writing signed by the Employee and the Company. The Employee agrees that any change or changes in his/her employment duties or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

(d)     Severability. The invalidity or unenforceability of any provision of this Agreement shall not affect or impair the validity or enforceability of any other provision of this Agreement.

(e)     Waiver. No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

(f)     Successor and Assigns. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation or

entity with which or into which the Company may be merged or that may succeed to all or substantially all of its assets or business; provided, however, that the obligations of the Employee are personal and shall not be assigned by the Employee.

(g)    Governing Law, Forum and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the State of New Jersey or, if appropriate, a federal court located within New Jersey), and the Company and the Employee each consents to the jurisdiction of such a court. The Company and the Employee each hereby irrevocably waives any right to a trial by jury in any action, suit or other legal proceeding arising under or relating to any provision of this Agreement.

(h)    Captions. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

WITNESS our hands and seals:

**Warehouse Solutions Inc. d/b/a Intelligent Audit**

Date:_____9/24/20_____          By:_____Hannah Testani_____

**Hannah Testani**
**Chief Operating Officer**

**Christopher Colomb**

Date:_____          _____

(Signature)

6

entity with which or into which the Company may be merged or that may succeed to all or substantially all of its assets or business; provided, however, that the obligations of the Employee are personal and shall not be assigned by the Employee.

(g)   Governing Law, Forum and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without reference to the conflicts of laws provisions thereof). Any action, suit, or other legal proceeding which is commenced to resolve any matter arising under or relating to any provision of this Agreement shall be commenced only in a court of the State of New Jersey or, if appropriate, a federal court located within New Jersey), and the Company and the Employee each consents to the jurisdiction of such a court. The Company and the Employee each hereby irrevocably waives any right to a trial by jury in any action, suit or other legal proceeding arising under or relating to any provision of this Agreement.

(h)   Captions. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF THE PROVISIONS IN THIS AGREEMENT.

WITNESS our hands and seals:

Warehouse Solutions Inc. d/b/a Intelligent Audit

Date:_____   By:_____
                                     Hannah Testani
                                     Chief Operating Officer

Christopher Colomb

Date:___9/24/20___                  _____
                                     (Signature)

6

# EXHIBIT C



**James W. Boyan III**
Partner
Direct: (201) 270-4935
jboyan@pashmanstein.com

March 30, 2021

**<u>VIA EMAIL AND OVERNIGHT MAIL</u>**

Amy Mader, Esq., General Counsel
enVista LLC
11555 N. Meridian Street, Suite 300
Carmel, IN 46032

      Re:    Christopher Colomb

Dear Ms. Mader:

      This firm represents Warehouse Solutions Inc., d/b/a Intelligent Audit ("Intelligent Audit"). We write regarding Christopher Colomb who is a former employee of Intelligent Audit and a prospective employee of enVista LLC ("enVista"). Mr. Colomb's last day of work with Intelligent Audit was Friday, March 26, 2021.  It is our understanding that Mr. Colomb will begin working for enVista on April 1, 2021.

      Please be advised Mr. Colomb is bound by an agreement with Intelligent Audit (the "Agreement") which contains several restrictive covenants.  In particular, the Agreement contains a 12-month non-compete provision which prohibits him from engaging in any business (whether as an employee, consultant, or independent contractor) that is competitive with Intelligent Audit in the geographic area where Intelligent Audit does business for a 12-month period following the end of his employment. The Agreement also contains provisions barring Mr. Colomb from soliciting any of Intelligent Audit's employees, independent contractors, customers, prospective customers, or business partners for the same 12-month period. Finally, the Agreement prohibits him from disclosing any of Intelligent Audit's Proprietary Information (as that term is defined by the Agreement) to any third-parties.

      Since enVista is a direct competitor of Intelligent Audit, Mr. Colomb's prospective employment with enVista constitutes a clear violation of the Agreement. While we do not know whether enVista had prior knowledge of Mr. Colomb's restrictions, this letter shall serve as written notice of those restrictions.

Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601

Phone: 201.488.8200
Fax: 201.488.5556
www.pashmanstein.com

Please be advised that Intelligent Audit will file a lawsuit against enVista if it tortiously interferes with the Agreement and employs Mr. Colomb in violation of his non-compete. In addition, the Company will seek to hold enVista liable for its role in any other violations of the Agreement including, but not limited to, any disclosures of Intelligent Audit's Proprietary Information and any violations of the Agreement's non-solicitation provisions.  In addition, we demand that enVista preserve any and all documents that may be relevant to Intelligent Audit's potential claims against enVista and Mr. Colomb, including any communications between enVista and Mr. Colomb.

Please let me know by close of business on **March 31, 2021** whether enVista will continue with its plan to employ Mr. Colomb. If we do not hear from you by then we will assume that enVista has not retracted its offer of employment and will proceed accordingly.

Very truly yours,

James W. Boyan III

cc:     Hannah Testani, Chief Executive Officer
        Christopher Colomb